## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Robert DuBoise,

        Plaintiff                       Case No.:  8:21-cv-02328-SDM-CPT

v.

City of Tampa, Richard R.
Souviron, Det. Phillip Saladino,
Det. K.E. Burke, the Estate of
Det. John Counsman, and Sgt.
R.H. Price,

        Defendants.

_____/

## DEFENDANT CITY OF TAMPA'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant CITY OF TAMPA ("City"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the Complaint filed by Plaintiff ROBERT DuBOISE.  In support, the City states as follows:

### I.      Factual Overview

Plaintiff brings this action pursuant to 42 U.S.C. §1983, seeking "to vindicate the deprivations of his rights that caused his wrongful detention, prosecution, and incarceration." Doc. 1, ¶115.  Plaintiff contends that he was wrongfully convicted of a 1983 murder as a result of "illegitimate and fabricated evidence," specifically: (1) bitemark evidence that Plaintiff alleges

1

was knowingly fabricated by Defendant Souviron[1] in conspiracy with Defendants Burke, Counsman, and Price; and (2) testimony from jailhouse informants that Plaintiff contends was fabricated by Defendants Burke, Counsman, and Price.  Id., ¶¶5-7.  Plaintiff seeks to hold the City liable for the alleged actions of the individually named defendants under the doctrine of respondeat superior.  Id., ¶18. Plaintiff further maintains that the alleged violations of his constitutional rights "were caused by the policies and customs of the City of Tampa, as well as by the actions of policy-making officials for the City of Tampa." Id., ¶141.

## II.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "The pleader is not entitled to relief 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"  *Martin v. Barrister's Collection Svcs., Inc.*, 2009 WL 10670325, *1 (M.D. Fla. Sept. 23, 2009) (citing *Iqbal*, 129 S. Ct. at 1950).  "A complaint that provides labels and conclusions or a formulaic recitation of the elements of a cause of action is not

---

[1]    Souviron is a dentist and forensic odontologist.  Doc. 1, ¶17.  The other individual defendants are former Tampa Police Department ("TPD") officers.  Id. at ¶¶14-16.

2

adequate to survive a Rule 12 (b)(6) motion to dismiss." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citation omitted). *See also Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996) ("[t]o survive a motion to dismiss, a plaintiff may not merely 'label' his or her claims.").

### III.   Memorandum of Law

Plaintiff's respondeat superior claims against the City fail as a matter of law because such claims are not available in a §1983 action. Plaintiff's 'policy and custom' claims against the City likewise fail, as Plaintiff has failed to sufficiently allege a connection between any constitutional violations and a City policy or custom, let alone identify a City policymaker who was the moving force behind any such violation. Moreover, Plaintiff's description of five alleged incidents over the span of 22 years fails to allege a persistent and widespread practice sufficient to establish a custom or policy that could subject the City to liability.

### A.   Plaintiff's Respondeat Superior Claims against City for Alleged Torts of Individual Defendants (Counts 1 through 4) Should be Dismissed

Counts 1 through 4 appear to be directed only to the individually named defendants. Doc. 1, ¶¶116, 124, 129, and 133. However, earlier in his Complaint, Plaintiff asserts that "[t]he City of Tampa is liable for all torts committed by the Defendants pursuant to the doctrine of respondeat superior." Id., ¶18. Plaintiff's assertion in this regard is contrary to well-established law

that respondeat superior is not applicable in the context of a §1983 claim.  *See, e.g., Hall v. Smith*, 2005 WL 1871144, *4 (M.D. Fla. July 27, 2005) ("respondeat superior is a theory of liability not available for claims raised pursuant to 42 U.S.C. §1983.").  *See also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest.").

Thus, to the extent that Plaintiff seeks to assert respondeat superior claims against the City in connection with his claims against the individual defendants in Counts 1 through 4, such claims should be dismissed.

## B. <u>Plaintiff's 'Policy & Custom' Claim (Count 5) Should be Dismissed</u>

In Count 5, Plaintiff alleges that his wrongful conviction was caused by "both written policies and unwritten customs" of the City.  Doc. 1, ¶140.  "A policy is a decision that is officially adopted by the [governmental agency] or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental agency]."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  A custom is an "unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law."  *Rocker v. Sheriff of Marion Cty., Fla.*, 2009 WL 10705944, *1 (M.D. Fla. Feb. 2, 2009) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1332 (11th Cir. 2007)).

While a 'policies and customs' claim may be actionable under §1983, "[v]ague and conclusory allegations" will not support such a claim against a municipality.  *Hall v. Smith*, 2005 WL 1871144 at *4.  Thus, "the simple mention of a policy and/or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.  The plaintiff must allege that the policy or course of action was consciously chosen or officially sanctioned or ordered." *Rosario v. Miami-Dade Cty.*, 490 F.Supp.2d 1213, 1225 (S.D. Fla. 2007) (citations omitted).

1. Plaintiff Fails to Sufficiently Allege Existence of City Policy or Custom

In conclusory fashion, Plaintiff alleges that the City promulgated "written policies" that caused his wrongful conviction. Doc. 1, ¶140.  However, Plaintiff fails to identify or describe any written City policy concerning the use of bitemark evidence or jailhouse informants.  Indeed, the Complaint makes no attempt to identify or describe any written policy of the City.  Thus, it appears that Plaintiff is alleging that his rights were violated pursuant to custom.  But rather than identifying any custom of the City, Plaintiff alleges only that the City "had notice of practices and customs of officers and agents of the Tampa Police Department," including the fabrication of forensic evidence and the fabrication of statements from jailhouse informants.  Id., ¶146 (emphasis added).

5

2. <u>Plaintiff Fails to Identify City Policymaker or Sufficiently Allege that City Custom was Moving Force of Constitutional Violation</u>

Whether asserting a violation of custom or policy, a plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). "The official policy or custom must be the moving force of the constitutional violation in order to establish liability of a governmental body under §1983." *Cuesta v. School Bd. If Miami-Dade Cty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002) (citation omitted).

Here, Plaintiff generically asserts that his injuries were caused "by the actions of policy-making officials for the City of Tampa" (Doc. 1, ¶141) and that unnamed "leaders, supervisors, and policymakers of the City of Tampa directly encouraged, and were thereby the moving force behind the very type of misconduct at issue…" (id. at ¶147). However, nowhere in the Complaint is any such leader or policymaker identified by name or title, or otherwise described.

Indeed, Plaintiff's generic claim that (unidentified) City policymakers were the "moving force" behind the alleged misconduct (Doc. 1, ¶147) is contradicted by his own factual allegations. To wit, in maintaining that the use of beeswax to form bitemark impressions is "scientifically unreliable," (id.,

6

¶34), the Complaint claims that Defendants Saladino and Burke used beeswax: (1) because they were "instructed" to do so by Defendant (and non-City employee) Souviron; and (2) "only because another officer in the Tampa Police Department operated a honey business on the side." Id., ¶¶31, 35. Either of these disparate theories is inconsistent with the notion that beeswax was used pursuant to any City custom or at the direction of any City policymaker.

Likewise, Plaintiff alleges that the TPD officers' decision to arrest Plaintiff was made in "rel[iance] on the conduct of Defendant Souviron." Id., ¶48. See also id., ¶43 ("Defendant Souviron told Defendant Burge that [Plaintiff] was the one who had bitten the victim at the time of her death."); ¶55 (noting that after additional dental molds were taken subsequent to Plaintiff's arrest, Defendant Souviron again concluded that the bitemark on the victim had been made by Plaintiff). Plaintiff's allegation that his arrest and detention were based on the forensic opinion of a non-City dental expert is inconsistent with the claim that he was wrongfully arrested and detained pursuant to any City policy or custom.

With respect to his jailhouse informant claim, Plaintiff alleges that "the Police Officer Defendants reached an agreement to fabricate statements by informants who would falsely testify that [Plaintiff] had confessed to the crime while in custody." Id., ¶58. Again, the allegation that the individual

defendants conspired <u>among themselves</u> to fabricate such statements is inconsistent with such practice having been a City policy or custom or directed by anyone with final policymaking authority.[2]

Plaintiff alleges that the City "failed to properly train and supervise" its officers and agents with respect to forensic evidence and the use of jailhouse informants.  Id., ¶143.  The Supreme Court has held that "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  In *Hall*, this Court rejected the plaintiff's 'failure to train' claim, noting that he "ha[d] failed to allege any specific facts connecting the supervisors with any alleged failure of staff to conduct a warrantless entry into a home under exigent circumstances appropriately, either from poor or inadequate training or through lack of supervision."  2005 WL 1871144 at *5.  Likewise, Plaintiff here fails to identify any supervisory personnel of the City, let alone allege

---

[2]     As previously noted, at the motion to dismiss stage, all well-plead allegations must be taken as true.  That said, Plaintiff's claims regarding the jailhouse informant borders on the absurd.   According to Plaintiff, the individual TPD officers: (1) fabricated a story that was inconsistent with the other evidence of the subject murder; (2) fed this inconsistent story to a jailhouse informant; and then (3) compelled the informant to submit to a polygraph examination, presumably to assess the credibility of the fabricated story that they themselves had concocted.  Doc. 1, ¶¶74-75; 78.

facts connecting any such supervisors to the allegedly fabricated bitemark evidence or jailhouse informant evidence.

### 3. Plaintiff Fails to Allege Persistent and Widespread Practice

This Court has held that:

> [i]n order to demonstrate a policy or custom, the plaintiff must show a persistent and widespread practice. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Rocker*, 2009 WL 10705944 at *1 (citations omitted). *See also Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *Florida Family Ass'n, Inc. v. School Bd. Of Hillsborough Cty.*, 494 F.Supp.2d 1311, 1323 (M.D. Fla. 2007) ("A custom is a practice that is so settled and permanent that it takes on the force of law. Therefore, it is generally necessary to show a persistent and widespread practice.") (citation omitted).

In *Hall*, this Court noted that the "[p]laintiff ha[d] not presented one incident of past misconduct which would have put the [c]ity on notice for a need for improved training or supervision." 2005 WL 1871144 at *4. Here, Plaintiff alleges that the City "had such notice through supervision of officers, successful motions, and reported and unreported cases." Doc. 1, ¶149. Yet, Plaintiff's only example of alleged misconduct prior to Plaintiff's 1983 arrest

9

comes from alleged grand jury testimony in 1973, i.e., a full decade prior to Plaintiff's arrest.

Apparently recognizing this shortcoming, Plaintiff seeks to rely on four alleged incidents that occurred <u>after</u> his arrest.  Of course, such subsequent events are not relevant to Plaintiff's claims.  *See, e.g., Shehada v. Tavss*, 965 F.Supp.2d 1358, 1374 (S.D. Fla. 2013) ("the failure to investigate or take disciplinary action following the subject incident cannot support a claim of municipal liability, because the after-the-fact inadequate investigation or discipline could not have been the legal cause of the plaintiff's injury."); *Snow v. City of El Paso, Texas*, 501 F.Supp.2d 826, 833 n. 4 (W.D. Texas 2006) ("any [excessive force] complaint filed after the date of Plaintiff's arrest is irrelevant to the issue of the City's knowledge of a policy or custom of allowing excessive force or deliberate indifference to such custom on that date.").

In addition to being temporally irrelevant, none of the four subsequent events was substantially similar to the alleged misconduct here.  *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming dismissal of plaintiff's §1983 excessive force claim against city where plaintiff had been given list of all cases involving excessive force but could not show any of them "involved factual situations that [were] substantially similar to [his] case...."). Indeed, one of the examples cited by Plaintiff contradicts his theory that fabricating evidence was done so consistently as to become City custom.  To

wit, Plaintiff alleges that in the mid-1980s a tape recording captured a TPD officer coaching a confidential informant to lie.    However, Plaintiff acknowledges that the officer in question was subsequently removed from the force and criminally prosecuted, obviously undermining any notion that the City sanctioned or encouraged such conduct.  Doc. 1, ¶151.

Discussing a 1987 murder investigation, Plaintiff alleges that unnamed TPD officers procured faulty forensic evidence and obtained inculpatory statements by a jailhouse informant that the informant later recanted.   Id., ¶154.  However, Plaintiff does not allege that the "faulty" evidence (which had nothing to do with a bitemark) was manufactured or fabricated by TPD, nor does he allege that the informant's initial statement was untruthful, let alone fabricated by TPD officers.    Next, Plaintiff vaguely alleges that in 1995— twelve years after Plaintiff's arrest—TPD detectives made "improper" promises to jailhouse informants. Id., ¶155.  However, Plaintiff does not allege that any of the unnamed detectives instructed or encouraged any of the informants to provide false testimony at trial.  Finally, Plaintiff points to alleged "investigative misconduct" by Defendant Burke, wherein Burke allegedly "fail[ed] to disclose important information regarding his investigation, including his contacts with the victim's boyfriend." Id., ¶152. However, Plaintiff does not explain why the alleged contact with the boyfriend

constituted "important information," nor otherwise describe the supposed wrongdoing.

Even assuming, *arguendo*, that the four alleged post-arrest events were temporally relevant and sufficiently similar to Plaintiff's arrest, five events spanning 22 years come nowhere close to establishing a persistent and widespread practice. *See, e.g., Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that three instances, over several years, where officers abused the rights of black people "fell far short of showing a policy, custom or usage of officers to abuse the rights of black people, and far short of showing abusive conduct among officers so persistent that it must have been known to supervisory authorities."); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (holding that five incidents spanning multiple years involving alleged police misconduct were "scattered and [did] not coalesce into a discernable 'policy.'); *Whitaker v. Miami-Dade Cty*., 126 F.Supp.3d 1313 (S.D. Fla. 2015) (holding that four police shootings in a nine-month span, even assuming such shootings were unconstitutional uses of excessive force, was insufficient to establish a custom or policy).

## IV.   Conclusion

For the reasons stated herein, Defendant City of Tampa respectfully requests that this Honorable Court enter an order dismissing Plaintiff's claims against the City.

Respectfully submitted,

*/s/ David E. Harvey*
David Harvey, Esq.
Florida Bar No.:  610046
City Attorney's Office
315 E. Kennedy Blvd., 5th Floor
Tampa, FL  33602
Telephone:  (813) 274-8791
David.Harvey@tampagov.net
Annette.Antinorihall@tampagov.net
Counsel for Defendant City of Tampa

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 28, 2021** a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will send a notice of electronic filing to the following:

Daniel Marshall
Jesse Isom
Human Rights Defense Center
P.O. Box 1151
Lake Worth, FL  33460